IN THE UNITED STATES DISTRICT COURT **FILED**

U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS EASTERN DISTRICT ARKANSAS

_____DIVISION    MAR 2 6 2003

SCOTT SCANLON                                    JAMES W. McCORMACK, CLERK      PLAINTIFF

ADC#118511                                       By:_____ DEP CLERK

Vs.                    CIVIL CASE NO. 5:03CV00117

                                                        JTR

JURY TRIAL DEMANDED


LARRY NORRIS, Ar.Dept.of Corr. (ADC) Director           DEFENDANTS

MAX MOBLEY, ADC Deputy Director Health services

JOHN BYUS, ADC Medical Administrator

PHIL RUGGIERO, ADC Ombudsman

DR. ROBIN HICKERSON, ADC Psychiatrist

GRANT HARRIS, ADC Diagnostic Unit Warden

RANDY WATSON, ADC Diagnosic Unit Asst. Warden

MAJOR RICK WAGONER, ADC Diag. Unit Cheif of Security

CORRECTIONAL MEDICAL SERVICES, INC. (CMS) ADC Medical Provider

DR ROLAND ANDERSON, CMS Regional Director

DR.SOLOMON MOGBO, CMS Employee

DR. LORNE RYAN, CMS Consult Doctor

                                                        Mobley
                                                        Ray

## COMPLAINT

This is a civil rights action filed by SCOTT SCANLON, a
state prisoner, for damages, declaratory and injunctive relief
under 42 U.S.C.§ 1983, alleging cruel and unusal punishment by
the reckless, callous and deliberate indifferences to his serious
medical needs in violation of the Eighth Amendment to the United
States Constitution. Plaintiff also alleges Medical Malpractice
and negligence under the Arkansas Medical Malpractice Act
A.C.A.§16-114-201 et. seq. All defendants are being sued in their

2

official and individual capacities. There is no other lawsuits in State or Federal Court dealing with the same facts involved in this action. The Administrative Grievance procedures have been exhausted for all applicable claims.

## I. JURISDICTION

1. The court has jurisdiction over plaintiffs claims of violation of Federal Constitutional Rights under 42 U.S.C. §§1331 (a) and 1343.

2. The court has supplemental jurisdiction over plaintiff's State law medical malpractice and negligence claims under 28 U.S.C. §1367.

## II. PARTIES

A. Plaintiff: SCOTT SCANLON ADC#118511

    Address: Diagnostic Unit Bks 2

                7500 Correction Circle

                Pine Bluff, AR. 71603

B. Defendants:

    1. Larry Norris, ADC Director

    Work Address: ADC Central Office

6814 Princeton Pike Rd. P.O: BOX 8707

                Pine Bluff, AR. 71611-8707

    Home Address: Unknown

    2. Max Mobley, ADC Deputy Director Health Services

    Work Address: ADC Central Office
                6814 Princeton Pike Rd.
                P.O.BOX 8707

                Pine Bluff, AR. 71611-8707

    Home Address: Unknown

3. John Byus, ADC Medical Administrator

Work Address: ADC Central Office

                6814 Princeton Pike Rd.
P.O.BOX 8707

                PIne Bluff, AR. 71611-8707

Home Address: Unknown

4. Phil Ruggiero, ADC Ombudsman

Work Address: ADC Central Office

                6814 Princeton Pike Rd.
P.O.BOX 8707

                Pine Bluff, AR. 71611-8707

Home Address: Unknown

5. Dr. Robin Hickerson, ADC Pschiatrist

Part-time work address: Diagonstic Unit

                        7500 Correction Circle

                        Pine Bluff, AR. 71603

Home/Main Office Address: Unknown

6. Grant Harris, ADC Diagnostic Unit Warden

Work Address: JCJ/CF

                7206 W. 7th St.

                Pine Bluff, Ar. 71603

Home Address: Unknown

7. Randy Watson, ADC Diagnostic Unit Asst. Warden

Work Address: Diagnostic Unit

                7500 Correction Circle

                Pine Bluff, AR. 71603

Home Address: Unknown

8. Major Rick Wagoner, Diag. Unit Chief of security

Work Address: Diagnostic Unit

                7500 Correction Circle

                Pine Bluff, AR. 71603

Home Address: Unknown

9. Correctional Medical Services, Inc., (C.M.S.) ADC Medical
Provider

Main Office Address: 12647 Oliver Blvd.

                            St. Louis, Mo. 63141

10. Dr. Roland Anderson, C.M.S. Regional Director

Work Address: ADC Central Office

                 6814 Princeton Pike Rd.
                 P.O. Box 8707

                 Pine Bluff, Ar

11. Dr. Solomon Mogbo, C.M.S. Doctor

Part-time work address: Diagnostic Unit

                          7500 Correction Circ le

                          Pine Bluff, AR. 71603

Home Address: [last known]

                   13500 Chenal Parkway, Apt. 1901

                   Little Rock, AR. 72211

12. Dr. Lorne Ryan, C.M.S. Consult Doctor

Work Address: 500 S. University Ave.

                 Little Rock, AR.72205

Home Address: Unknown

III. STATEMENT OF CLAIM

A. Preliminary Statement

Plaintiff is a prisoner in the Arkansas Department of Corection (ADC). In 1996 he was struck down with a physical sickness which progressively debilitated him. He was tentively diagnosed as suffering from dysautonomia (a disease of the autonomic nervous system) and possibly shy-drager's syndrome (a deadly variant of dysautonomia). These diagnoses were given by two qualified physicians.

Plaintiff entered the ADC in Sept. 8, 2000. By this time his ph ysical illness had so affected him that he was bedridden most of the time. He was unable to stand or walk and had been dependent upon a wheelchair to get around for almost two years. He suffered from nausea, vertigo and exertional sickness.

Since entering the ADC plaintiff has become sicker. His symptoms have gotten worse and he has developed new problems, experiencing chest, abdominal and back pain. Pushing himself in his wheelchair has become more difficult. It has become harder to sit up in his wheelchair, as this causes an increase in the sickness and pain. These symptoms are now so acute that plaintiff needs the help of other inmates to push him to the prison chow hall, but because of sickness he hasn't gone often and has missed many meals.

Despite repeated sick call requests and attempts to obtain appropriate medical care by plaintiff, the prison administistative and medical staff have refused to do the appropriate testing for

the dysautonomia diagnosis, address plaintiff's increasing sickness, pain and mobility problems or make provisions to ensure he received adequate nutrition. Currently there is a controversy on the correct diagnosis for plaintiff's condition, but as none of the appropriate diagnostic tests are being performed plaintiff has been left to suffer.

The actions and inactions of the defendents violate all current standards of decency, meet none of the medical standards of care and at best show deliberate indifference to plaintiff's suffering and serious medical needs.

Plaintiff brings this complaint seeking the medical care he needs as well as any other declaratory and injunctive releif appropriate. Costs, attorney fees and damages are sought as well as whatever releif this court deems appropriate.


B. FACTS

1.Plaintiff entered the ADC on 9/8/00 with a preexisting physical infirmary, tenatively diagnosed as dysautonomia and possibly shy-drager's syndrome (a deadly variant of dysautonomia) by two physicians. (see Exhibits A1,A2,A3,B&C)

2. Lab work showing plaintiff is in a state of adrenal exhaustion was a factor in this diagnosis. (see Exhibits D&E)

3. When he entered the ADC plaintiff's health had already deteriorated to where he was bedridden most of the time. Being unable to stand or walk he required a wheelchair to get around. He suffered from nausea, vertigo and nearsyncope spells. Exertion or sitting up for short periods of time cause his symptoms to worsen, resulting in waves of sickness and weakness.

Page 6

4. Plaintiff had been prescribed Benadryl for his nause and vertigo prior to entering the A.D.C., but Dr. Mogbo would not continue this medication.

5. On 9/19/00 Plaintiff saw Dr. Hickerson and requested she order the Benadryl for his nause, vertigo and episodic anxiety associated with his vertigo/dizzy spells. Dr. Hickerson ordered the Benadryl for the plaintiff.

6. On 7/12/01 Plaintiff was seen by Dr. Kieser, A spinal cord injury specialist, who recommended an endocrine assessment, which was never done.

7. Plaintiff has submitted numerous sick call requests to have his medical complaints addressed, but has been unable to receive the diagnostic work or care needed.

8. Due to lack of medical care and declining health plaintiff submitted an emergency grievance and exhausted the administrative remedies.(see Exhibits F1,F2,F3,F4,F5,G,H,I,J,& K)

9. On 7/9/02 Plaintiff was seen by Dr. Ryan, who after an approx. 30 min. visit without performing any of the tests for dysautonomia or any diagnostic work, stated plaintiff's problem was "hysteria".

10. On 7/24/02 Dr. Hickerson issued a report, based in part of the Dr. Ryan consult, stating plaintiff was suffering only from a somatization disorder.

11. On 7/31/02 plaintiff was seen by Dr. Mogbo who stated that he could not help him.

12. Plaintiff, to date, has not seen the Doctor again, has not been tested for dysautonomia or have his physical complaints and suffering adequately addressed.

13. Numerous letters have been mailed by various concerned parties to: Larry Norris ADC Director, Max Mobley ADC Deputy Dir. Health and Correctional programs, John Byus ADC Medical Administration, Diagnostic Unit Warden, and C.M.S. Regional Director, alerting them to plaintiff's condition and requesting thier help. (see Examples Exhibits L1,L2,M1,M2,M3,N1,N2,O,P1,P2,P3,Q1,Q2,R1,& R2)

14. A partial list of individuals who sent letters to the defendents on plaintiff's behalf are: Ms Shirley Dicks, Ms Joan Stewart, Ms Deann Roberts, Ms Jean Lynn, Ms Aurora Garza, Ms Bonnie Carter and Ms Laura Sherman.

C.EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.Plaintiff has exhausted his administrative remedies on all applicable claims in this complaint.

2. On 5/12/03 after numerous sick call requests ellicitted no adequate response and plaintiff was getting sicker he submitted an emergency medical grievance (see Exhibits F1,F2,F3,F4 & F5)

3. On 5/16/02 Plaintiff received a "Warden's/Center Supervisor's Decision" signed by Asst. Warden R. Watson on Behalf of Warden G. Harris what stated his grievance was determined to be a medical matter and it was forwarded to the Medical Administration. (see Exhibit G)

4. On 5/16/02 Plaintiff was seen by Ms Campbell the C.M.S. Medical grievance officer who informed him he was receiving all the medical care he needed and the only problem was communications difficulties. (see Exhibit H)

5. On 5/23/02 Plaintiff sent a letter to Max Mobley, Deputy Director Health and Correctional Programs and to the Regional Director C.M.S. Medical Services, with a copy of his

grievance attached, appealing this decision and seeking help. (see Exhibits I & J)

6. On 6/6/02 Plaintiff received a letter from Max mobley stating his complaint had been forwarded to Phil Ruggiero the C.M.S. Ombudsman "for investigation and response". (see Exhibit K)

7. Plaintiff has never received any other response from any one.

D. DYSAUTONOMIA

1. The disease plaintiff has been tentatively diagnosed with, and which he should have been thoroughly assessed for, is dysautonomia, and possibly Shy-Drager's Syndrome ( adeadly variant of dysautonomia) (see Exhibits S & T)

2. Dysautonomia refers to a dicorder of autonomic nervous system function and can effect multiple symptoms and have various symptomology, but the defining symptom is neurally mediated hypotension.

3. For a minimum assessment of dysautonomia "careful measurements of blood pressure and pulse in the supine and standing positions are imperative." If the patient is unable to stand, seated measurements should be attempted. see Nassab, B.S.E. &Paydarfar,MD., Neurogenic Orthostatic Hypotension, "Medicine for the Practicing Physician,"(4th Ed. 1996) pg.1795

4. Dr. Crane M.D. and other medical sources recommened the use of a tilt table with blood pressure and cardiac monitors, especially for patients, like plaintiff, who are unable to stand.

5. Plaintiff was not given any dysautonomia tests.

6. Plaintiff's manifestation of fatigue, nausea and muscle wasting weight loss, combined with previous lab results of low metanephrines (see Exhibit D & E)

Should have prompted a adreno curtico tropic hormone study to confirm or exclude adrenal insufficiency. see Burch M.d. ,The weak and tired patient, "Medicine for the Practicing Physician" (4th Ed. 1998) Pg.705

7. Further tests which should be performed for a possible dysautonomia diagnosis are:

-three-stage upright tilt-table test

-complete cardiac assessment

-complete hormonal/Endocrine profiles

-Cerebral blood flow studies '

-Waking and sleeping homeostatic functioning assessments

-Electronic imaging i.e. MRI's,CT Scans, PET Scans of appropriate physical structures.

[Note: List is non-Exhaustive]

8. None of the foregoing tests or assessments have been performed or ordred by the defendents for the plaintiff.

9. Plaintiff had given Dr.Mogbo, Dr.Hickerson and C.M.S. Medical Records Secretary Kim Lambert copies of Exhibits A1,A2,A3,D & E on 6/6/01, 5/14/01 & 5/21/02 respectively.


E. DR. SOLOMON MOGBO

1.Defendent Dr. Solomon Mogbo is a licenced practicing physician acting as an agent and employee of C.M.S.

2. Dr.Mogbo is responsible for assessing, diagnosing and providing appropriate medical care for the physical complaints and illnesses of inmates at the ADC Diagnostic Unit.

3. Plaintiff had to submit several sick call requests' before he could see Dr. Mogbo.

4. Plaintiff would see Dr. Mogbo who would order a minimal non-effectual test or treatment which would neither identify or resolve plaintiff's medical problems.

5. Plaintiff would not be called back to see Dr.Mogbo to be informed of test results or for assessment of treatment efficacy.

6. Plaintiff would then start submitting sick call requests again to try and see the Doctor about the same problems.

7. On 7/24/02 Dr. Mogbo entered into aggreement with Dr. hickerson and Dr. Anderson to deny plaintiff the diagnostic work and medical care he requires.

8. On 7/31/02 Dr. Mogbo recorded in plaintiff's file findings of "chest is clear" & " Abdomen is benign".

9. These findings are determined by auscultation and palpitation.

10. Dr. Mogbo did not perform any auscultations or palpitations to plaintiff on 7/31/02.

11. Dr. Mogbo's failure to effectively assess, diagnose, treat or follow up on plaintiff's physical complaints and condition shows deliberate indifference in violation of the Eighth Amendment and Medical Malpractice.

12. Dr. Mogbo's charting of results of assessments he didn't do ranges into the criminal.


F. DOCTOR LORNE RYAN

1. Defendant is a licensed practicing physician who acted in a consulting capacity as an agent of C.M.S.

2. On 7/3/02 plaintiff was taken to Dr. Ryan for assessment.

3. After an approx. 30 min. visit with Dr. Ryan he diagnosed plaintiff with hysteria.

4. Dr. Ryan's finding of hysteria was reached without any diagnostic work or any of the appropriate tests for dysautonomia being performed.

5. During the Dr. Ryan visit plaintiff was hoisted half erect by prison correctional officer Robert Spencer while Dr. Ryan took a hurried blood pressure reading.

6. Dr. Ryan recorded this as a standing blood pressure reading in his consult report.

7. Plaintiff has been unable to stand and has required a wheelchair to get around for approx. three years prior to this exam.

8. Dr. Ryan's assessment was so grossly negligent that it constituted deliberate indifference in violation of the Eighth Amendment and medical malpractice.

G.DR. ROBIN HICKERSON

1. Defendent Dr. Robin Hickerson is a licenced practicing pyschiatrist employed by the ADC and is responsible for competent assessment of and the providing of appropriate mental health care for inmates seen by her in the ADC.

2.On 9/19/00 plaintiff saw Dr. Hickerson and requested she order Benadryl for his nasea,vertigo and episodic anxiety associated with his verdigo/dizzy spells. Dr. Hickerson ordered the Benadryl for plaintiff.

3. Plaintiff was seen by Dr. Hickerson for a few minutes six times a year to have his Benadryl perscription renewed.

4. On 5/14/01 plaintiff gave Dr. Hickerson copies of the Endocrinologists report with the tenative diagnosis of dysautonomia and the lab work showing the low metanephrines and normeta nephrines (see Exhibits A1,A2,A3,D & E)

5. On 7/25/01 Dr. Hickerson tried to convince plaintiff to take a phenothiazide such as thorazine or an anti-depressant.

6. Plaintiff had previously informed Dr. Hickerson of his severe sensitivity to phenothiazides.

7. This sensitivity was recorded in plaintiff's chart.

8. Phenothiazides and anti-depressants are contra indicated for patients with dysautonomia and should not be perscribed to them.

9. On 5/1/02 Plaintiff attempted to explain to Dr. Hickerson that a diagnosis of dysautonomia could easily be confirmed or ruled out with a simpl tilt table test while blood pressure and cardiac function was monitored. Dr. Hickerson responded by stating "Do you spend all your time studying your disease" and refused to discuss it further.

10. On the morning of 7/24/02 Plaintiff served Dr. Hickerson with a "notice of intent" informing her that he intended to persue a medical malpractice complaint to which she was a potential defendent.

11. On 7/24/02 Dr. Hickerson issued a psychiatric clinic report ("REPORT") stating plaintiff is suffering from a somatization disorder.

12. The report diagnosis was made in violation of psychiatric standards of assessment. A diagnosis of somatization disorder can only be reached after physical illness has been excluded by "thorough medical assessment of the patient." Anfinson

M.D. & Stoudemire M.D., <u>Somatoform disorders, including</u>
<u>Somatization disorder, Conversion Disorder and Hypochondriasis,</u>
<u>"Medicine for the Practicing Physician",</u>( 4th Ed. 1996) pg. 34

13. The report stated plaintiff was:

a. emotionally unstable

b. irresponsible

c. egocentric

d. resents rules & regulations

e. passive-aggressive

f. manipulative

12. The report was in contradiction to Dr. Hickersons previous observations such as on 3/20/02 where she recorded plaintiff was "polite and cooperative" and numerous other notations of good eye contact and positive observations.

13. Dr. Hickerson's report findings were in contradiction to an assessment of plaintiff done by Dr. Walaford a Phd. Psychologist on 12/3/99 who stated plaintiff was "orientated x3, articulate, intelligent, and has good insight and logic. He demonstrates no behavioral or M/H [Mental health] disorders.... This man does not present as malingering or with factious disorder. This mans problems are, in all probability, physiological in orgin," (see Exhibit V1 & V2)

14. The 7/24/02 report was issued in retaiation to plaintiff's serving of the "Notice of Intent" on the morning of 7/24/02.

15. On numerous occassions Dr. Hickerson recorded that the reason for prescribing the benadryl was for nausea and vertigo.

16. On the 7/24/02 report Dr. Hickerson recorded that she had been prescibing the benadryl as a placebo.

17. In the 7/24/02 report Dr. Hickerson recorded that she had entered into agreement with defendants Dr. Anderson and Dr. Mogbo to deny plaintiff the diagnostic work and medical care he requires.

18. Dr. Hickerson contradictory reports, grossly negligent diagnosis and conspiracy to deny plaintiff access to diagnostic work and medical care constitutes deliberate indifference in violation of the Eighth Amendment abd Medical Malpractice.

H. LARRY NORRIS

1. Defendant Larry Norris is the Director of the ADC and is responsible for the living conditions and safety, to include the quality and availability of medical care for inmates in the ADC.

2. Numerous letters were sent to Mr. Norris alerting him to plaintiff's condition and need for help. (see Sect. B. Facts 13 & 14)

3. No response or reply was ever received from Mr. Norris by Plaintiff.

4.Mr. Norris' Actions and inaction reprsent deliberate indifference in violation of the eighth Amendment, Also Medical Malpractice and negligence.

I. MAX MOBLEY

1. Defendent Max Mobley is the ADC Deputy Director Health and Correctional Programs and is responsible for the quality, adequacy and availability of medical services and care for inmates in the ADC.

2. On 5/23/02 Plaintiff mailed a copy of his Medical grievance with a letter asking for help to Mr. Max Mobley (see Exhibits I,F1,F2,F3,F4 & F5)

3. On 6/4/02 Mr. Mobley sent plaintiff a letter stating that he had forwarded plaintiff's complaints to the Ombudsman Mr. Phil Ruggiero (see Exhibits K)

4. Mr. Mobley was sent numerous letters alerting him that plaintiff's problems had not been resolved and still needs help. (see Sect. B Facts 13 & 14)

5. Mr. Mobley has not been heard from since the 6/4/02 letter.

6. Mr. Mobley's Actions and inactions represent deliberate indifference in violation of the Eighth Amendment, also Medical Malpractice and negligence.

J. JOHN BYUS

1. Defendant JohnByus is the ADC Medical Administrator and is responsible for the quality, adequacy and availability of medical services and care for inmates in the ADC.

2. Numerous letters were sent to Mr. Byus alerting him to plaintiff's condition and need for help. (see Sect. B Facts 13 & 14)

3. No response or reply has ever been received from Mr. Byus by Plaintiff.

4. Mr. Byus' actions and inactions represent deliberate indifference in violation of the Eighth Amendment, also Medical Malpractice and negligence.

K. DR. ROLAND ANDERSON

1. Defendant Dr. Roland Anderson is the regional director for C.M.S. and is responsible for the quality, adequacy and availability of the medical services and care provided for inmates in the ADC.

2. On 5/23/02 plaintiff mailed a copy of his medical grievance with a letter asking for help to DR. Anderson as the

C.M.S. Regional Director (see Exhibits J,F1,F2,F3,F4 & F5)

3. Dr. Anderson as the C.M.S. Regional Director was sent numerous letters alerting him to plaintiffs condition and need for help. (see Sect, B Facts 13 & 14)

4. On 7/24/02 Dr. Anderson entered into agreement with Dr. Hickerson and Dr. Mogbo to deny plaintiff the diagnostic work and medical care he requires.

5. No response has ever been received by plaintiff from Dr. Anderson.

6. Dr. Anderson's actions and inactions represent deliberate indifference inviolation of the Eighth Amendment, also medical Malpractice and negligence.

L. PHIL RUGGIERO

1. Defendant Phil Ruggiero is the ADC/CMS ombudsman and is responsible to investigate and resolve any disputes over the quality, adequacy and availability of the medical services and care being provided for inmates in the ADC.

2. Mr. Ruggiero was informed by Mr. Mobley of plaintiff's complaints (see Exhibit K)

3. Plaintiff has never spoken with, seen or received any type of communication from Mr. Ruggiero.

4. Mr. Ruggiero's actions and inactions represent deliberate indifference in violation of the Eighth Amendment and negligence.

M. GRANT HARRIS

1. Defendant Grant Harris is the Warden of the ADC Diagnostic Unit and is responsible for the health and safety, to include adequacy and availability of medical services and care, of inmates at the unit.

2. As warden of the Diagnostic Unit Mr. Harris is responsible for reveiwing grievances for this unit.

3. On 5/12/02 plaintiff submitted an emergency medical grievance. (see Exhibits F1,F2,F3,F4 & F5)

4. On 5/15/02 Assistant Warden Watson signed a "Warden's/Center Supervisor's Decision" on Warden Harris' Behalf stating that plaintiff's grieance had been forwarded to the medical Administration. (see Exhibit G)

5. Numerous letters were sent to the Warden of the diagnostic Unit alerting him to plaintiff's condition and need for help. (see Sect. B Facts 13 & 14)

6. Plaintiff has received no help or communications from Warden Harris concrning his complaints.

7. Warden Harris' actions and inactions represent deliberate indifference in violation of the Eighth Amendment, also medical malpractice and negligence.

N. RANDY WATSON

1. Defendent Randy Watson is the Assistant Warden of the ADC Diagnostic Unit and is responsible for the health and safety, to include adequacy and availability of medical services and care of inmates at that Unit.

2. As assistant warden of the Diagnostic Unit Randy Watson acts on the berhalf of Warden Harris.

3. On 5/12/02 plaintiff submitted an emergency medical grievance. (see Exhibits F1,F2,F3,F4 & F5)

4. On 5/15/02 Assistance Warden Watson signed a "Wardens/Center Supervisor's Decision" on Warden Harris' Behalf, Which stated that plaintiff's grievance had been forwarded to the medical Administrator.(see Exhibit G)

5. Numerous letters were sent to the DIagnostic Unit Warden alerting him to Plaintiff's condition and need for help. (see Sect. B Facts 13 & 14) These latters were received by Asst. Warden Watson on Warden Harris' Behalf.

6. Plaintiff has received no help or communications from Asst. Warden Watson concerning his complaints beside the 5/15/02 decision.

7. Asst. Warden Watson's action and inaction represent deliberate indifference in violation of the Eighth Amendment, also medical malpractice and negligence.

O. MAJOR RICK WAGONER

1. Defendent Major Rick Wagoner is the Diagnostic Unit Chief of Security. He is responsible for the conditions,operations and safety at the Diagnostic Unit. This includes access to medical services and care for inmates.

2. On 5/13/02 Dr. Mogbo wrote a script which stated: "inmate unable to move self for long distances by wheelchair. May be allowed to have meals in the barracks if ADC allows." (see Exhibit V)

3. ON 5/14/02 The meals in barracks script was shown to the kitchen Supervisor Mr.Barbarotto who stated he had no problem with it but it must be approved by security.

4. On 5/14/02 The script was taken to Major Wagoner by kitchen staff.

5. On 5/15/02 Plaintiff asked Lieutenant McCool if his meals in the barracks script had been approved. The Lt. stated "no way" the Major had denied it .

6. Meals are brought to the guards in the barracks every day.

7. Diabetic inmates receive sandwhiches to take to the barracks every day.

8. Diabetic Inmates receive a full tray to take to barracks on holidays when only two meals are served.

9. Plaintiff was informed by RNP Mussadig that inmates at other ADC units are allowed meals in the barracks if the medical circumstances warrant it.

10. Major Wagoner's deliberate indifference and negligence has caused plaintiff to miss many meals in detrement to his health in violation of the Eighth Amendment and Ark. Negligence statutes.

P. CORRECTIONAL MEDICAL SERVICES, INC.

1. Defendent C.M.S. is the corporation contracted to provide health care services to the ADC and is responsable for the quality, adequacy and availability of medical services and care being provided for inmates in the ADC.

2. C.M.S. has a policy and practice of requiring inmates to submit multiple sick call requests for the same problem before he can see a doctor. (see Exhibits W,X,Y & Z)

3. C.M.S. has the policy and practice of providing the least expensive forms of medical care, treatment and diagnostic work regardless of patient needs.

4. C.M.S. has the policy and practice of encouraging it's employees to provide minimal medical care for inmates or to discourage inmates from seeking medical help through delay tactics, no follow ups or repeated non-effectual treatments for complaints.

5. C.M.S. and it's emploees have cost incentivess to provide minimal care and treatment for inmates.

6. These policies and practices represent deliberate indifference to the inmate's serious medical needs in violation of the Eighth Amendment.

7. C.M.S. is liable for the actions and inactions of it's

Page 20

employees for medical malpractice and negligence under the doctrine of respondeat superior.

Q. SUMMARY

Plaintiff has basically been given the prison runaround. After repeated sick call requests he would finally get to see the doctor. The doctor, if he did anything, would order nominal or inappropriate tests. Plaintiff would wait for the test results or a follow up visit, but would never be called back to the infirmary or hear from the medical staff. The merry-go-round would then start again with plaintiff submitting repeated sick call requests trying to see the doctor again about the same problem.

Plaintiff's administrative grievance met a similar fate with each leval of reveiw either passing the buck or insisting plaintiff was receiving the finest quality medical care until finally no response at all.

The one chance plaintiff had of seeing an outside doctor was a trvesty. Dr. Ryan's grossly negligent and callously indifferent exam only helped to further close off any chance for plaintiff having the appropriate diagnostic work andf care done.

The defendent reliance on an alleged mental illness as an excuse to justify their lack of diagnostic work, care and complete physical assessment is unconscionable and against every standard of medical care in both the physical and pyschiatric fields. Their attitude harkens back to the 1800's when it was beleived that the insane didn't feel pain so it was OK to house them in appalling conditions and allow them to suffer terrible abuses.

But the fact is that the insane feel pain. A madman can break his leg, develop cancer, or die from a heart attack. A mental health diagnosis is never an excuse for sloppy, indifferent and negligent  medical care.

Page 21

Plaintiff has and is suffering daily and continues to get worse. The pain,nausea,vertigo and exertional sickness are ongoing. It has become harder and harder for him to get around and take care of himself. Showers are exhausting ordeals, even going to the restroom can be a major task at times. It is unknown at this time what long term system and organ damage has been sustained but it is safe to say it has occured.

IV. RELIEF REQUESTED

WHEREFORE,Plaintiff respectfully seeks the following relief:

1. That the acts and omissions descibed herein by the defendents be declared to be in violation of plaintiff's rights under the Constitution and laws of the United States, also under the Arkansas Medical Malpractice Act and Negligence Statutes.

2. Preliminary and permanent injunctions ordering the transfer of plaintiff to an appropriate medical facility for complete physical assessment, diagnostic work, treatment and care.

3. The awarding of nominal, compensatory and punitive damages as allowed by law, against each defendent, jointly and severally.

4. The awarding of court cost, fees and reasonable attorney fees.

5. All additional declaratory,injuctive or other relief as the court deems just and proper.

I declare under penalty of perjury (18 U.S.C.§ 1621) that the foregoing is true and correct. Executed on this 20th day of _February_ ,2003.

SCOTT SCANLON #118511

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# Exhibits Attached

# to Original

# Documents in

# Court's Case File